IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES D. MCMILLIAN, )
 )
        Plaintiff, )
 )
   v. ) 1:04CV01169
 )
LABORATORY CORPORATION OF AMERICA )
and LABORATORY CORPORATION OF )
HOLDINGS, )
 )
        Defendants. )

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

This case is before the Court on a partial motion to dismiss filed by the defendants pursuant to Fed. R. Civ. P. 12(b)(6). A motion of this type cannot succeed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993)(quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff. Id.

### Facts

In his complaint, plaintiff alleges that he formerly worked as a computer analyst for defendants. Plaintiff states that he was diagnosed with post-traumatic stress disorder prior to his employment with defendants. (Complaint ¶ 10) This condition affects his ability to drive, work under stress, sleep, and perform

unspecified daily activities. (Id. ¶ 15) Plaintiff claims to have spoken to defendants about his disorder and requested a modification in his work hours to accommodate the condition. Defendants responded by allowing him to reduce his lunch time so that he could leave work during daylight hours. However, defendants denied a request that he be allowed to work at home some days. (Id. ¶ 11)

Unfortunately, the arrangement just described did not last. Plaintiff contends that in the spring of 2004, he was told that he would be required to work overtime and that his accommodation would no longer be allowed. He states that he was also given an unsatisfactory performance evaluation and put on a performance improvement plan. (Id. ¶ 12) He responded by resigning in April of 2004. (Id. ¶ 13)

Relying on these basic facts, plaintiff has raised several causes of action. First, he claims that his rights under the American's with Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA) were violated. He asserts that his post-traumatic stress disorder is a disability and that defendants violated the ADA by failing to reasonably accommodate him, discriminating against him with respect to the terms and conditions of his employment on the basis of his disability, giving him a poor evaluation, creating a hostile work environment, and constructively terminating him. (Id. ¶ 18)

Next, plaintiff claims that defendants allowed workers who were not born in America to work better hours and for better terms than plaintiff, who is American-born. (Id. ¶¶ 25, 28) He also

claims that he was replaced by a worker who was not American-born and who was less qualified. He concludes that this violated Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, et seq. (Title VII).

Plaintiff also raises two other federal claims. The first alleges that he was over the age of 40 when constructively terminated, that he was replaced by a younger worker with less experience, and that defendants, therefore, violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (ADEA). The second claims that he took leave to care for a sick child, that this time would have qualified as leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (FMLA), and that his own needs for time off also qualified as FMLA leave. He alleges that he was not told that FMLA leave was available until after the need to take leave for his daughter had passed and that he was disciplined in retaliation for exercising his own right to leave. Where possible, plaintiff requests punitive damages for his federal claims.

In addition to the claims raised under federal law, plaintiff also raises two state law claims. He asserts that all of defendants' actions described above amount to intentional and/or negligent infliction of emotional distress under North Carolina law.

Defendants seek dismissal of plaintiff's Title VII, ADEA, FMLA, intentional infliction of emotional distress, and negligent infliction of emotional distress claims. They also seek to have

his ADA claim dismissed to the extent that it is based on a theory of constructive discharge.

## Discussion

Defendants' initial argument is that plaintiff's Title VII, ADEA, FMLA, and ADA constructive discharge claims should all be dismissed because all of those claims require plaintiff to show that he suffered an adverse employment action and he cannot do so. In making that argument, defendants assume that plaintiff will be relying on the burden-shifting proof scheme set out for discrimination cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] For his Title VII, ADA, and ADEA claims, this would require him to prove that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was performing his job in a way that met defendants' legitimate expectations, and (4) if discharged or demoted, he was replaced by a worker who either was not in the same protected class (Title VII & ADA) or was substantially younger (ADEA). Causey v. Balog, 162 F.3d 795, 802, (4th Cir. 1998)(Title VII); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 310-313, 116 S.Ct. 1307, 1309-1310, 134 L.Ed.2d 433 (1996)(ADEA); Young v. Shore Health System, Inc., 305 F. Supp. 2d 551, 558 (D. Md. 2003)(ADA claims treated the same as Title VII and ADEA

---

[1] The burden-shifting scheme in McDonnell Douglas is used where a plaintiff is unable to provide direct proof of discrimination. However, a plaintiff can also use traditional methods of proof if he has direct evidence of discrimination. White v. Federal Exp. Corp., 939 F.2d 157 (4th Cir. 1991). Because this case is only at the motion to dismiss stage, it is not certain which method plaintiff will attempt to use. However, he has not disagreed with the applicability of the McDonnell Douglas method.

-4-

claims).  If the claim is not one for discharge or demotion, plaintiff would need to show that he was treated worse than similarly situated workers who were either not in his protected class or were substantially younger.  White v. BAI Waste Services, LLC, 375 F.3d 288, 295, (4th Cir. 2004).  As for plaintiff's FMLA claim, it is based mainly on a theory of retaliation, not discrimination.  Claims under the FMLA are also subject to analysis using the McDonnell Douglas method.[2]  Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).  To establish a McDonnell Douglas prima facie case for a retaliation claim, plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) circumstances indicate that the adverse action was causally connected to plaintiff's protected activity.  See generally, Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001).[3]

---

[2] The parties do not address whether plaintiff's allegation that he was not notified of the availability of FMLA for the illness of his daughter may state a claim.

[3] Plaintiff states in a heading in his response brief that he has also raised allegations of a hostile work environment that support his claims under Title VII, the ADEA, and the FMLA. (Pl. Brf. p. 5) However, the argument below the heading is somewhat confusing because it has little or nothing to do with a hostile environment claim, but instead talks more about constructive discharge. More importantly, plaintiff's assertion is not borne out by his complaint.  His Title VII/national origin claim and ADEA claim allege only that he was constructively discharged and that defendants' motivation was his national origin or age.  They do not state that plaintiff was subjected to a hostile work environment due to his national origin or age.  Likewise, his FMLA claim only mentions retaliation and a lack of notice, not a hostile environment.  The complaint does mention a hostile environment, but does so only as to plaintiff's ADA claim.  As noted by defendants in their reply, hostile environment allegations do not appear to have been part of the charge plaintiff filed with
(continued...)

Defendants acknowledge that two possible adverse employment actions are alleged in the complaint: constructive discharge and an unjustified negative performance evaluation that led to plaintiff being placed on a performance improvement plan. However, defendants contend that plaintiff's claims must all be dismissed because he has not pled facts sufficient to show that a constructive discharge occurred and has not pled facts that show that the performance evaluation had consequences sufficient to significantly alter plaintiff's employment status or make it an "ultimate employment decision." Employment decisions must meet one of these standards to qualify as an "adverse employment action." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).

Unfortunately for defendants, their arguments are premature. As this Court recently noted, the McDonnell Douglas analysis "is a fact intensive analysis. Such analyses are not normally suitable ground to cover in deciding a motion to dismiss. Because a complaint needs only to be a basic rendition of a plaintiff's allegations, more specific facts are often absent." Williams v. Frontier Spinning Mills, Inc., ___ F. Supp. 2d ___, 2005 WL 1027282 (M.D.N.C. 2005). This general observation is reinforced by the fact that almost all of the roughly fifteen cases directly cited to

---

[3](...continued)
the Equal Employment Opportunity Commission. For this reason, he should seriously consider whether he wishes to pursue this theory any further in the case. Defendants will be able to challenge any hostile environment claim at summary judgment.

by defendants in the portions of their brief dealing with plaintiff's federal claims involve summary judgment motions, not motions to dismiss. In fact, defendants do not even set out the standards for a motion to dismiss in their brief. This raises a considerable red flag regarding whether defendants' arguments are more properly addressed following discovery in a motion for summary judgment.

The only exception to the statement above concerning defendants' citation to summary judgment cases in the federal claims portion of their brief is <u>Williams v. Giant Food Inc.</u>, 370 F.3d 423 (4th Cir. 2004). The case does not deal with a performance evaluation, but does involve a constructive discharge claim. Still, even as to constructive discharge, it is distinguishable. The Fourth Circuit Court of Appeals upheld the dismissal of a complaint claiming constructive discharge where the factual allegations supporting the constructive discharge were that the plaintiff's supervisors "yelled at her, told her she was a poor manager, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back." <u>Id</u>. at 434. The dismissal was upheld because constructive discharge requires more than dissatisfaction with work, unfair criticisms, or unpleasant working conditions. Instead, the conditions must be so intolerable that a reasonable person would resign. <u>Id</u>.; <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994).

While there are some similarities between <u>Giant Foods</u> and the present case (negative evaluation, allegedly unpleasant working conditions) there is also a significant difference.  Plaintiff claims that he has a disability that affects his ability to work under stress and his ability to drive at night, that defendants knew this, and that they took actions which increased plaintiff's stress and, more importantly, required him to drive at night.  Depending on the exact nature and seriousness of plaintiff's problems with night driving, a requirement that he do so might jeopardize his safety and/or make him unable to work his job.  Defendants have not cited a case showing that such a situation, as a matter of law, could not establish constructive discharge.

It must be stressed that the exact nature of plaintiff's problem with night driving and its relation to his job with defendants is not known at this time.  However, the complaint is sufficient to put defendants on notice as to the nature of plaintiff's claims and the matter must be explored more through discovery.  For now it is enough that the Court cannot say that defendants have shown that there is no set of facts which plaintiff can prove which will establish his claim.  This is the standard which defendants needed to meet and they have not done so.  Their

motion should be denied as to plaintiff's claims under federal law.[4]

In addition to seeking dismissal of plaintiff's federal law claims, defendants also ask that the Court dismiss plaintiff's state law claims for intentional and negligent infliction of severe emotional distress. They assert that the intentional infliction claim must be dismissed because plaintiff has not alleged sufficient facts to establish extreme and outrageous behavior on the part of defendants and that the negligent infliction claim must be dismissed because he has not alleged any negligent, as opposed to intentional, acts by defendants. Plaintiff has not opposed this request in any way or even mentioned his state law claims in his brief. This alone justifies granting defendants' motion as to these claims.

Not only has plaintiff failed to oppose defendants' motion as to his state law claims, but similar claims have been previously

---

[4]As set out earlier, a second possible adverse employment action is plaintiff's negative evaluation and subsequent placement on a performance improvement plan. Defendants state in their brief that such occurrences do not normally constitute adverse employment actions in claims based on federal employment law. See, e.g., James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir.), cert. denied, ___ U.S. ___, 125 S.Ct. 423, 160 L.Ed.2d 323 (2004). However, they can sometimes be adverse actions where they directly lead to a significant change in employment status such as, for example, a denial of a pay increase. Gillis v. Georgia Department of Corrections, 400 F.3d 883 (11th Cir. 2005)(three percent rather than five percent raise based on an annual evaluation was adverse employment action). It is not alleged in the complaint that this occurred in the present case. However, given that the case will be going forward on plaintiff's federal claims in any event, the parties can also address this in discovery. The Court does not need to discuss it further at this time.

-9-

Case 1:04-cv-01169-NCT-RAE   Document 16   Filed 07/21/05   Page 9 of 10

dismissed in this district in other cases. See <u>Atkins v. USF Dugan, Inc.</u>, 106 F. Supp. 2d 799, 810 (M.D.N.C. 1999)(motion to dismiss granted as to intentional infliction claim where plaintiff alleged he was forced to work in pain after heart bypass surgery, told he was too old and sick to work, and fired in violation of state and federal law); <u>Ijames v. Murdock</u>, No. 1:01CV00093, 2003 WL 1533448 (M.D.N.C. 2003)(motion to dismiss negligent infliction claim granted where only intentional employment law violations were alleged). For this additional reason, defendants' motion to dismiss should be granted as to plaintiff's state law claims.

**IT IS THEREFORE RECOMMENDED** that defendants' partial motion to dismiss (docket no. 12) be denied as to plaintiff's federal law claims and granted as to plaintiff's state law claims for intentional and negligent infliction of severe emotional distress.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

July 21, 2005